OPINION OF THE COURT
STAPLETON, Circuit Judge:
Brian B. and a class of similarly situated school-aged youths (“Plaintiffs”) appeal the District Court’s denial of their motion for a preliminary injunction barring enforcement of a Pennsylvania statute on constitutional grounds. The statute, 24 Pa. Cons.Stat. § 13-1306.2(a) (“Subsection A”), limits the education available to youths convicted as adults and incarcerated in .adult, county correctional facilities. The Defendants are the Pennsylvania Department of Education (“DOE”), its secretary, and three local school districts.
The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction under 28 U.S.C. § 1292(a)(1).
I.
Pennsylvania law confers on youths between the ages of 6 and 21 the right to a public education until the completion of high school. See 24 Pa. Stat. Ann. tit. 13, § 1301. In accordance with this statutory mandate, juveniles who have been adjudicated delinquent and youths who have been convicted as adults and sentenced to state correctional institutions receive full education programs. Subsection A, however, provides that youths convicted as adults and sentenced to adult, county fácil- *585 ities are only entitled to the minimal education provided to expelled students:
A person under twenty-one (21) years of age who is confined to an adult local correctional institution following conviction for a criminal offense who is otherwise eligible for educational services as provided under this act shall be eligible to receive educational services from the board of school directors in the same manner and to the same extent as a student who has been expelled....
24 Pa. Cons.Stat. § 13 — 1306.2(a). County facilities are the only “local” ones.
An expelled student under age 17 has a right to only minimal educational services (about 5 hours per week versus the usual 27.5 hours), and an expelled student 17 or older is not entitled to education at all. See 22 Pa.Code § 12.6(e) (providing that expelled students under 17 are still entitled to education). As a result, Subsection A substantially limits, and for those 17 and over eliminates, the educational opportunities of youths convicted as adults and sentenced to adult, county correctional facilities. Although Subsection A treats these youths as if they were expelled, there is no requirement that they be expelled or that their offenses be school-related.
Subsection A thus differentiates between school-aged youths convicted as adults based upon the locale of their incarceration: state inmates receive a full education, while county inmates receive limited education. A youthful offender’s place of incarceration depends on the length of sentence and in certain cases the discretion of the sentencing judge. Those sentenced to two years or less are confined in county facilities. Those sentenced to five years or more go to state facilities. Sentences between two and five years can be served in either a county or state facility at the discretion of the sentencing judge. See 42 Pa. Const. Stat. § 9762.
Pre-trial detainees and special education students are the only exceptions from Subsection A. As a result of a settlement agreement prompted by this case, all school-aged youths confined as pre-trial detainees receive a full educational program, as do all school-aged youths who require special education because of a disability.
The District Court applied rational basis review under the Equal Protection Clause and concluded that the Plaintiffs had failed to show the reasonable probability of success on the merits necessary for a preliminary injunction. The Plaintiffs insist that because Subsection A burdens education, the statute warrants heightened scrutiny under Plyler v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Moreover, the Plaintiffs contend that even if PlylePs intermediate scrutiny does not apply, Subsection A also fails to pass constitutional muster under rational basis review.
A district court considering a motion for preliminary injunction must decide:
(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.
Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir.1999) (citing ACLU v. Black Horse Pike Regional Bd. of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996) (en banc)). “We review a district court’s [disposition] of a preliminary injunction according to a three-part standard. Legal conclusions are reviewed de novo, findings of fact are reviewed for clear error, and the ‘ultimate decision to grant or deny the preliminary injunction’ is reviewed for abuse of discretion.” ACLU v. Reno, 217 F.3d 162, 172 (3d Cir.2000) (quoting Maldonado v. Houstoun, 157 F.3d 179, 183 (3d Cir.1998), cert. denied, 526 U.S. 1130, 119 S.Ct. 1802, 143 L.Ed.2d 1007 (1999)).
*586 II.
We have held that the heightened scrutiny applied in Plyler v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), is limited to “unique circumstances” that are absent here:
In Plyler, the Supreme Court applied intermediate scrutiny to a statute that prohibited the disbursement of state funds for the education of the children of undocumented aliens. Plyler, however, expressly reaffirms the Court’s holding in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), that education is not a fundamental right and therefore that burdens on education are not subject to heightened scrutiny. It was the “unique circumstances” of a burden on education coupled with the disadvantaging of children of aliens that led to heightened scrutiny in Plyler, and the Court subsequently has expressly limited Plyler to those circumstances.
Philadelphia Police & Fire Assoc. for Handicapped Children, Inc. v. City of Philadelphia, 874 F.2d 156, 165 (3d Cir.1989) (quoting Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 459, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988)).
The Supreme Court has declined to extend Plylers heightened scrutiny to other education cases. In Kadrmas, the Court addressed “the constitutionality under the fourteenth amendment equal protection clause of a school bus service user fee. The Court rejected Kadrmas’ contention that those who could not afford the fee were denied equal access to education and that such a denial implicated heightened scrutiny.” Philadelphia Police & Fire Assoc. for Handicapped Children, 874 F.2d at 165 n. 5. Notably, Kadrmas distinguished Plyler on the ground that the children in Plyler were innocent victims of their parents’ illegal immigration:
We have not extended [Plyler] beyond the “unique circumstances” that provoked its unique confluence of theories and rationales. Nor do we think that the case before us today is governed by the holding in Plyler. Unlike the children in that case, Sarita Kadrmas has not been penalized by the government for illegal conduct by her parents.
Kadmas, 487 U.S. at 459, 108 S.Ct. 2481 (citations and internal quotation marks omitted).
The youth covered by Subsection A are being punished as a result of their own illegal conduct, not because of the illegal conduct of their parents. Accordingly, the heightened scrutiny applied in Plyler is inappropriate here. Lacking a basis for heightened scrutiny, we must apply the rational basis review ordinarily applied to social and economic legislation.
“[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relationship to some legitimate end.” Romer v. Evans, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). “In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.” Romer, 517 U.S. at 632, 116 S.Ct. 1620. Indeed, under rational basis review, legislation enjoys a presumption of validity, and the plaintiff must negate every conceivable justification for the classification in order to prove that the classification is wholly irrational. See Federal Communications Comm’n v. Beach Communications, 508 U.S. 307, 314-15, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).
III.
The Defendants tender four justifications for the distinction Subsection A draws between county and state, adult institutions: “1) space limitations in county correctional institutions; 2) higher per-student cost in county correctional institutions; 3) security concerns that would arise in state correctional institutions if *587 education were discontinued; and 4) the greater need for education in state correctional institutions, independent of security concerns.” Appellant’s Br. App. 34-35.
First, the record indicates that 13 of the 73 adult, county correctional facilities in Pennsylvania do not have sufficient space to provide a complete educational program, and the legislature may have determined that requiring a full educational program in these institutions would require them to either preempt other services or to renovate at additional expense. Under rational basis review, a statute survives even if it is over-inclusive. Thus, if the legislature decides that space limitations in a fraction of the adult, county facilities justify the uniform limitation on education in adult, local facilities, that decision is not an irrational means of responding to the space concerns at some adult, local facilities.
Second, although some adult, county facilities have more school-aged inmates than state institutions, state facilities generally have higher youth populations. . As the DOE Secretary puts it, “the legislature may have intended to reduce average per-pupil expenditures by not providing education to correctional facilities that house few convicted offenders, where per-pupil costs might well be higher.” Appellant’s Br. App. 38. While Plaintiffs perceive an inconsistency between this rationale and the decision to require school districts to pay for the education of all school-aged pre-trial detainees, all special education students, and all inmates in juvenile detention, we agree with the Defendants that a reasonable legislator might find these choices compatible. It is not irrational to require education regardless of location for pre-trial detainees because the guilt of these defendants has not been adjudicated and they thus could be seen as retaining Pennsylvania’s general right to education. The legislature could also view education for special needs students as having a higher priority than education generally. Finally, the per-pupil cost in juvenile facilities may rationally be perceived as lower because the entire population is of school age. In each case, the necessity of legislative line-drawing “renders the precise coordinates of the resulting legislative judgment ■ virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally:” Beach Communications, 508 U.S. at 316, 113 S.Ct. 2096; see also Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (“Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.”).
Third, the record indicates that before Subsection A was enacted, inmates in state correctional institutions received full educational services while school-aged county inmates did not. The Secretary suggests that curtailing education in state facilities would raise security concerns not similarly raised in county facilities. It is not irrational to believe that the discontinuation of an existing program is more likely to engender inmate hostility than the failure to institute one that inmates have never experienced. A perceived difference in security risks provides a rational basis for Section A’s distinction between state and local institutions.
Fourth, the legislature could have determined that the longer term youth population found in the state correctional system would benefit more from educational services than the more transient population found in county jails. An offender’s term in a county correctional institution could be less than a school year, a situation that could not occur for a school-aged youth incarcerated in a state correctional institution. While it may be true, as Plaintiffs *588 insist, that even short breaks in education can render a youth less likely to complete his education, a legislature’s non-arbitrary judgment about educational priorities is not subject to judicial second-guessing.
Thus, each of the justifications tendered by the Defendants provides a rational basis for the distinctions drawn by Subsection A.[1]
IV.
Because the Plaintiffs have not shown a reasonable probability that the statute will be overturned, the District Court did not abuse its discretion in denying their motion for preliminary injunction. The District Court’s order of June 17,1999, will be affirmed.

. This fact distinguishes this case from Romer v. Evans, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996), the Supreme Court’s most recent case applying rational basis review and invalidating a statute on equal protection grounds. The Court there struck down a Colorado constitutional amendment barring the adoption — and mandating the repeal — of any state or local law specifically protecting homosexuals from discrimination. The Court explained that the amendment identified a classification of persons by a single trait and then disadvantaged that group "across the board" in all situations. Romer, 517 U.S. at 633, 116 S.Ct. 1620. Because the amendment was "a status-based enactment divorced from any factual context,” it was not possible to "discern a relationship to [any] legitimate state interests.” Romer, 517 U.S. at 635, 116 S.Ct. 1620. In contrast, juveniles convicted as adults and held in adult, county correctional facilities are not a group identified by a single trait, and the burden imposed on them by Subsection A is limited to a specific educational context that, as we have shown, enables us to discern a rational connection with legitimate state interests.